**STATE of Utah, Plaintiff and Appellee,**

v.

**Lewis Ricky YATES, Defendant and Appellant.**

**No. 950444–CA.**

Court of Appeals of Utah.

May 23, 1996.

property. Thus, she could not take the settle- ment as an intestate heir.

Joan C. Watt, Salt Lake Legal Defender Ass'n, Salt Lake City, for Appellant.

Jan Graham, Atty. Gen., Thomas B. Brunker, Asst. Atty. Gen., Crim. Appeals Div., Salt Lake City, for Appellee.

Before DAVIS, BENCH and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Lewis Ricky Yates appeals his sentence for theft, a class A misdemeanor, in violation of Utah Code Ann. § 76–6–404 (1995). Specifically, Yates challenges the classification of his offense as a class A misdemeanor, arguing he is entitled to a lesser punishment afforded by the amended statute that became effective between his plea agreement and sentencing. We reverse and remand.

## FACTS

The facts are undisputed. When Yates broke up with his former girlfriend, Raylynn Coumier, he moved out and took her property. The State charged Yates with third degree felony theft pursuant to Utah Code Ann. §§ 76–6–404, –412 (1995). As a result of plea negotiations, Yates agreed to plead guilty to class A misdemeanor theft. The State accepted the plea agreement and amended the information to allege a property value from $100 to $250—the amount then necessary to support the conviction. *See* Utah Code Ann. § 76–6–412(1)(c) (1995).

Yates pleaded guilty to class A misdemeanor theft. He was released from jail pending a presentence investigation and sentencing hearing. Yates, however, missed his appointment for his presentence investigation interview and failed to appear at the sentencing hearing, prompting the trial court to issue a bench warrant for his arrest. Yates's presence was subsequently secured at a hearing, and the trial court continued sentencing in a second effort to obtain a presentence report. Yates again missed his scheduled presentence investigation interview and sentencing hearing. The trial court issued another bench warrant.

In the meantime, the legislature amended the theft statute under which Yates was charged. *See id.* § 76–6–412 (Supp.1995). Under the amended statute, class A misdemeanor theft required a theft of property valued from $300 to $1000, while theft of property valued under $300 was classified as a class B misdemeanor. *Id.* Consequently, Yates's class A misdemeanor of theft involving property valued at $100 to $250 became a class B misdemeanor under the amended statute.

Yates was subsequently arrested. The trial court scheduled a third sentencing hearing, allowing time for a presentence report. The court also denied Yates's motion for bail. At sentencing, the court imposed the punishment prescribed for a class A misdemeanor. Contesting the sentence, Yates asserted that Utah law required the trial court to sentence him for class B misdemeanor theft pursuant to the amended classifications. The trial court refused, noting that Yates voluntarily had pleaded to a class A misdemeanor and that Yates's failures to appear caused the delay in sentencing beyond the effective date of the amendments. Yates now appeals.

## ISSUES AND STANDARD OF REVIEW

We address two issues on appeal: (1) whether defendants are entitled to a lesser sentence when the legislature reduces the penalty for the crime charged after conviction but before sentencing; and (2) whether defendants' dilatory conduct affects their entitlement to a lesser sentence. Both issues present questions of law. We review questions of law for correctness, according no deference to the trial court's conclusions. *State v. Pena*, 869 P.2d 932, 936 (Utah 1994); *see also State v. Beavers*, 859 P.2d 9, 12 (Utah App.1993) (observing appellate courts review conclusion of law under nondeferential correction of error standard when facts are undisputed).

## ANALYSIS

### Effect of Statutory Penalty Reduction

Yates argues that Utah law entitles him to the lesser penalty afforded by the amended statute and that the trial court failed to follow well-established precedent. The State responds that because the stolen property's actual value was disputed during

plea negotiations, Yates's case presents an exception to the rule.[1]

Defendants are entitled to the benefit of the lesser penalty afforded by an amended statute made effective prior to their sentencing. *Belt v. Turner*, 25 Utah 2d 230, 232, 479 P.2d 791, 792–93, *aff'd on reh'g*, 25 Utah 2d 380, 381–82, 483 P.2d 425, 426 (1971). The Utah Supreme Court articulated this principle twenty-five years ago: "A new policy having been adopted by the legislature concerning the punishment for the offense we are here concerned with ... should inure to the defendant's benefit even though the offense had been committed and the plea thereto made prior to the amendatory legislation." *Id.* The supreme court has subsequently affirmed a defendant's right to a lesser sentence when the legislature reduces the penalty for the crime charged in the interim between commission of the offense and sentencing. *See Smith v. Cook*, 803 P.2d 788, 792 (Utah 1990); *Shelmidine v. Jones*, 550 P.2d 207, 211 (Utah 1976); *State v. Saxton*, 30 Utah 2d 456, 459–60, 519 P.2d 1340, 1342 (1974); *State v. Tapp*, 26 Utah 2d 392, 394–95, 490 P.2d 334, 336 (1971).

Additionally, the criminal code itself suggests defendants are entitled to any lesser penalties that the legislature has determined appropriate for their crimes:

Any offense committed prior to the effective date of this code shall be governed by the law, statutory and non-statutory, existing at the time of commission thereof, *except that a defense or limitation on punishment available under this code shall be available to any defendant tried or retried after the effective date.*

Utah Code Ann. § 76–1–103(2) (1995) (emphasis added). Although the present case

---

1. The State claims the actual value of the stolen property is $1234. Coumier's insurance company, however, valued the property at $1150. The insurance company paid Coumier $900, the sum owed her after her $250 deductible. The trial court subsequently imposed restitution of the $250 deductible.

The State also introduces an argument grounded in contract theory for the first time on appeal. The State contends because it bargained for Yates's plea to class A theft, resentencing Yates

pursuant to the amended penalty deprives it of the benefit of its bargain. If we were persuaded this interesting theory compelled a different result here, we could address it because appellate courts may affirm on any proper ground. *See DeBry v. Noble*, 889 P.2d 428, 444 (Utah 1995). However, we are unpersuaded and unable to rule definitively on the argument inasmuch as the State has not cited any helpful authority. Accordingly, we do not consider the State's contract argument.

involves a plea agreement rather than a trial, the same principles of punishment apply.

The rationale underlying the rule affording defendants the benefit of lesser sentences was set forth in *Belt*. First, punishment is not imposed in order to exact vengeance upon the defendant. Rather, punishment serves to deter crime, remove the offender as a harm from society, as well as rehabilitate the offender. *Belt*, 479 P.2d at 793 (citing *People v. Oliver*, 1 N.Y.2d 152, 151 N.Y.S.2d 367, 372–74, 134 N.E.2d 197, 201–02 (1956)). Second, if the legislature finds a reduction in the penalty for a given crime necessary and appropriate to meet the goals of deterrence, rehabilitation, and removal from society, then the lesser penalty should be granted to all defendants sentenced subsequent to the modification. *Id.*

█ In the case of the theft statute involved here, the legislature decided it was time to revise the twenty-three-year-old law. Legislative history reveals the amendments were necessary to comport theft sentences with the consumer price index and to harmonize property offenses with the rest of the criminal code. *See* Tape of House Floor Debates, 51st Legislature, General Session (Feb. 9, 1995) (Statement of Rep. Ellertson). Legislators hoped the amendments would help "get the biggest bang for the dollar out of [state] correctional facilities, put people in there who really deserve to be there, and find ... a suitable alternative [for] those who really don't need to be in that setting." *Id.* Thus, the legislature found a reduction in penalties appropriate, and the trial court should have sentenced Yates pursuant to that legislative mandate.

█ The trial court should not have considered evidence or argument at sentencing about the actual value of the stolen property. Despite the State's claim to the contrary, stolen property's actual value is irrelevant after the State and the defendant have entered into a plea agreement. Here, the State amended the information and listed the stolen property's value at $100 to $250 because it agreed to accept Yates's guilty plea, not because the property's value was actually in that dollar range. In plea agreement cases, the "facts" listed in final, often amended, charging documents follow from an agreed upon penalty. Pleas like Yates's "are entered based upon imaginary or fictional sets of facts." *State v. Stilling*, 856 P.2d 666, 678 (Utah App.1993) (Jackson, J., concurring).

In theft cases where the State is willing to enter into and accept a plea agreement, stolen property's actual value provides only a starting point for plea negotiations. Once plea negotiations for theft charges begin, the State agrees to value stolen property according to the classification of offense to which the defendant agrees to plead guilty. Upon acceptance of a plea agreement, the State stipulates to certain "facts" supporting a certain classification of offense, and the actual value of the property is irrelevant for purposes of sentencing. *Cf. People v. Palmer*, 42 Colo.App. 460, 595 P.2d 1060, 1062 (1979) (holding defendant's statement about how much marijuana he actually possessed irrelevant after acceptance of guilty plea).

Utah law on this question is clear and the instant case does not present an exception to the well-established rule: Defendants are entitled to lesser criminal punishments mandated by statutes that become effective before the court imposes sentence. *See Belt*, 479 P.2d at 792–93. After the legislature reduces criminal penalties, courts must impose sentences accordingly.

### Effect of Defendant's Delay

Yates contends he is entitled to the lesser sentence even though his misconduct caused the sentencing delay. Based on representations at oral argument, it is unclear whether the State today would have us limit the rule affording defendants a lesser penalty and exclude cases where a defendant's misconduct delays sentencing beyond the amended statute's effective date. The State, however, does concede that such a limitation would require us to distinguish existing case law.

█ Under supreme court precedent, defendants' pre-sentence conduct does not affect application of the rule affording defendants the benefit of a lesser punishment. *See Belt*, 479 P.2d at 792; *Saxton*, 519 P.2d at 1341. In *Belt*, the Utah Supreme Court held the defendant was entitled to a statuto-

rily reduced penalty even though sentencing was delayed because the defendant had left the state in violation of his probation. 479 P.2d at 792. Similarly, in *Saxton*, the supreme court remanded for imposition of a lesser sentence even though the sentencing hearing was delayed for two years due to the defendant's misconduct. 519 P.2d at 1342. Thus, the supreme court repeatedly has held defendants' actions that delay sentencing are irrelevant to the trial court's sentence. *Belt*, 479 P.2d at 792; *Saxton*, 519 P.2d at 1341.

On appeal, the State suggests *Belt* and *Saxton* are distinguishable from the present case because the underlying facts in those cases either were established by a trier of fact or were undisputed. The State thus returns to its argument about the actual as opposed to the stipulated facts of Yates's crime. We reiterate: once the State has accepted a plea agreement, the actual facts of the crime are irrelevant for purposes of sentencing. *See* Utah R.Crim. P. 11(g)(1). The prosecution accepts a fiction when it accepts plea agreements, and disputes about the actual facts of the crime come to an end. *Cf. State v. Copeland*, 765 P.2d 1266, 1276 (Utah 1988) (observing " 'once the court or prosecution has entered into a plea agreement and that plea has been accepted and entered, neither [the State nor the defendant] may unilaterally withdraw from the agreement without a showing that facts analogous to those warranting a mistrial exist (at least in the absence of a breach of the agreement by the defendant).' " (quoting *State v. Kay*, 717 P.2d 1294, 1304 (Utah 1986) (plurality opinion))). In short, upon acceptance of a plea agreement, the underlying facts of a crime become undisputed. We conclude that *Belt* and *Saxton* control the instant case.

Notwithstanding this supreme court precedent, the State warns against manipulative defendants who might obtain more favorable sentences by disregarding court orders to appear for sentencing. The State's concern is misplaced given the underlying principles of the rule. Utah courts respect the " 'legislative judgment that the lesser penalty ... is sufficient to meet the legitimate ends of the criminal law.' " *Belt*, 479 P.2d at 793 (quoting *Oliver*, 151 N.Y.S.2d at 372–74, 134

N.E.2d at 201–02). Moreover, " '[n]othing is to be gained by imposing the more severe penalty after [the legislature has acted]; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance.' " *Id.* (quoting *Oliver*, 151 N.Y.S.2d at 373, 134 N.E.2d at 201–02). Dilatory as well as diligent defendants are entitled to the benefit of the legislature's amended punishments and lesser sentences.

We are bound by the Utah Supreme Court's determination of the precise issue before us now. Accordingly, Yates's conduct subsequent to his guilty plea is immaterial to his sentence; the trial court should not have considered that Yates was substantially responsible for the sentencing delay.

## CONCLUSION

The trial court incorrectly sentenced Yates pursuant to the statute in effect at the time he committed his offense. Under criminal classifications in effect when Yates was sentenced, theft of property valued less than $300 constitutes a class B misdemeanor punishable by a prison term not exceeding six months. Accordingly, we reverse the trial court's ruling and remand for a new sentence pursuant to Utah Code Ann. § 76–6–412 (Supp.1995).

DAVIS, Associate P.J., concurs.

BENCH, Judge (concurring in result):

I agree that, under controlling supreme court case law, Yates should be resentenced to a class B misdemeanor. *See State v. Saxton*, 30 Utah 2d 456, 459–60, 519 P.2d 1340, 1342 (1974); *State v. Tapp*, 26 Utah 2d 392, 394–95, 490 P.2d 334, 336 (1971); *Belt v. Turner*, 25 Utah 2d 230, 232–33, 479 P.2d 791, 792–93, *aff'd on reh'g*, 25 Utah 2d 380, 381–82, 483 P.2d 425, 426 (1971). I am concerned, however, about sending the wrong message to those who have violated the law.

If Yates had presented himself for sentencing when ordered by the court, he properly would have been sentenced to a class A misdemeanor. Rather than appearing in a timely fashion, however, Yates became a fugitive from justice. It took a bench warrant and a subsequent arrest to get him to appear

for sentencing. Meanwhile, the legislature had amended the relevant statute. It seems to me unwise and shortsighted to reward Yates for his flight from justice by giving him the benefit of the amended statute. Nevertheless, we are bound by existing supreme court case law. *State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994) (stating vertical stare decisis requires lower court to strictly follow higher court's prior ruling), *cert. denied,* —— U.S. ——, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995).

I therefore concur only in the result.